The court will proceed to the second case of the morning, Greene v. Westfield Insurance. Mr. Richmond.  As you know, this matter has been before this court before on appeal. From a dismissal of the case against the plaintiffs, that decision was reversed, and it was sent back to district court, and that fact is also relevant, which we'll discuss later. Coincidentally, the last time I had the honor to be before this court was six years ago in a case that also involved the applicability of an exclusion in an insurance policy. That was the Home Federal Savings v. Thai Court title insurance case. In an opinion written by Judge Hamilton, he reversed the entry of summary judgment in favor of the insurer and remanded it back, and that's exactly what this court should do for the reasons we've explained in our brief and I want to talk to you about today. But before I talk about the policy exclusion, I want to address the other issue in this case, and that's the adequacy notice. Why didn't your clients notify Westfield of the federal suit? TOR victims sometimes do that, and wouldn't it have been in their interest, particularly once counsel for the VIM defendants withdrew? I agree. In some of the cases that have been analyzed by the briefs parties, the plaintiffs did in fact contact the insurance carrier. I don't know why that didn't occur in this case. I don't know if they knew who the carrier was at the time. I don't also believe, frankly, for the reasons we'll discuss, that that's relevant. You think that's not relevant? That our clients, the plaintiffs, did not notify the non-insurers? Okay. I think the issue, ultimately, is going to be... Judge Simon criticized your clients for not offering any evidence to rebut the presumption of prejudice arising from the lack of timely notice of the federal litigation. I mean, I would like you to address what evidence you offered below as to prejudice, and why that was sufficient to rebut the presumption of prejudice. Let's first address the issue of prejudice. That's fine. The court found, and we acknowledge, that prejudice to an insurer can be presumed from an unreasonable delay in notifying the insurer about the filing of the suit. What Judge Simon did not note was very important in this matter, and that is to quote the Indiana Supreme Court in Miller v. Diltz, if, and I quote, the injured party can establish some evidence that prejudice did not occur in the present situation, then, quote, once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed. In other words, it becomes a question of fact, and it's not proper for summary judgment. The district court completely ignored that in this matter, because we did come forward here, in fact, and show to the court on the summary judgment motion that there was evidence of no prejudice. We listed several reasons, but I want to focus on two of them. The first one was, as I pointed out before, the fact that this had come back to the district court from this court was important. Everything that happened in this case before Westfield learned of it was favorable to the VIM defendants, everything. The plaintiff's motion for probation injunction had been denied, and the case had been dismissed. So when this case came back, it was a complete, as we've said before, do-over. An answer hadn't even been filed yet. This is not like the Paint Shuttle case that was discussed also, Your Honor, in which an insurance carer didn't learn about the lawsuit until the insurance prior counsel had unsuccessfully attempted to get the case dismissed. No prejudice had occurred, Your Honor, none. Your Honor, I also want to address briefly. Congressman, I don't want to move you beyond notice if you have more to say on notice, but I think you make a fair point about Indiana law has sent some kind of mixed signals on this with direct notice and indirect notice, and that seems fairly complicated to me here, frankly. But what seems clear to me are the application of the exclusions or the exceptions in the policy. I just don't know how you get around that. However the notice issue comes out, you can call the notice issue a bit of a tie or something like that, but the exceptions that Judge Simon relied upon in his alternative reasoning for expected injuries in known claims, that just seems open and shut, and I encourage you to tell me why I'm mistaken. Only because you express that you believe that there is some question as to, as you said, what was later referred to by in dreaded as constructive notice. I would like to address that because I think it's crystal clear, and it's something that was not brought up in the briefs and I want to make sure that it's clear to you, and then I'll turn to the exclusions and I appreciate that. That Frankenmuth does support this decision that we're seeking from you is crystal clear from the case itself. Judge Simon said that this case was, that Frankenmuth was different than this case because he said it was about collateral estoppel. That was his words, about collateral estoppel. You'll need to look at one paragraph in Frankenmuth to see that that is not a proper basis to distinguish this case, and that paragraph consists of two sentences and it says, this is Frankenmuth in the estimate report, we grant transfer to consider the adequacy of notice to Frankenmuth. That's the reason they accepted transfer. The second sentence in that paragraph says, and I quote, we conclude that the notice here was adequate, and we next evaluate whether Frankenmuth was therefore stopped from denying liability. Let me put my question a different way. How to read Miller, how to read, what's that case, Republic Franklin, how to read Frankenmuth, it seems to me that how all those align, not align, intersect is better done by an Indiana court, and that given that you're talking about Indiana insurance law and all that, and that this case can be resolved on the basis of these exceptions because they seem pretty clearly to apply. Why is that an improper way to proceed as a federal court here in resolving this appeal? Let the Indiana court sort out Frankenmuth and Miller and all this other stuff, direct versus indirect notice, and why don't we just focus on Judge Simon's alternative reasoning, which is a lot easier? Well, there is one reason why, and that is because if your honors would determine that, in fact, there was proper notice given, the issue which was not ever decided by Judge Simon, one of the issues is whether or not, in fact, Westfield will be stopped from raising policy defenses. That was the issue when our motion for summary judgment was brought, that the court said we needed to first address the issue of notice before it could reach. So I don't think that if you decide the policy issues, it renders that, the policy exclusion renders those issues moot. It doesn't render the issue of notice moot. But I think that there is, and I'm happy to turn to the issue of the exclusions and why I don't think that there was sufficient evidence to support those, at least on a motion for summary judgment. I'd like to kind of, if I may, set out parameters of a question for you in that regard, because in terms of whether the injuries that the class members suffered were excluded as expected injuries, all of the injuries that are described in Judge Simon's default judgment opinion seem like straightforward dust and other types of injuries to me. Now, I mean, dust covering cars, houses, outdoor furniture, noxious smells, itchy eyes, and difficulty breathing. Why wouldn't those types of injuries have been expected by 2004, given not only the regulatory inspections that were going on by the state and the citations for fugitive dust, but the complaints to Mr. Will, who, I mean, he actually paid to have a number of cars washed. I mean, if there was a known dust problem, as there clearly was, weren't all of these specific types of injuries to be expected? First, to address your question. First off, I don't think that there was evidence that he received notification of injury, at least as defined by the policies you're on. Now, let's be clear. To establish these, you had to be shown that the VIN defendants either knew that bodily injury or property damage, as defined in the policies, had either actually already occurred or was practically certain to occur. And from what we're saying is that they had to have known not just that there were conditions that might cause property damage or bodily injury, but that, in fact, those kinds of injuries had occurred. I'll address in a minute your example, which is the only one that even comes close to that about the cars, but I first want to point out that the problem is that if you look at it, all of the notice in the form of complaints, et cetera, were of the conditions that were later found to have caused injury. There was notice that there was dust. There was notice that there were fumes. There was notice that there was odors. What there isn't evidence of was that they were put on notice that those things, those conditions, had caused either bodily injury as defined, which is, I'll just look at the definition because it's very clear here, it has to be bodily injury, sickness, or disease sustained by a person. And property damage, which is important for the dust issue in a minute, I'll bring it up, is physical injury to tangible property, including all resulting loss of use of that property or loss of use of tangible property that's not physically injured. Let me just turn, while I'm thinking about it, to the dust on your cars. Somebody runs a red light and hits a big pile of dirt in the middle and dust goes all over my car. Have I sustained property damage such that I would have a claim for property damage where if I went to my insurance company, I say, insurance company, I got dust on my car, I want to make a claim under my property damage coverage on my car. Would I have a claim for property damage? I don't think so. And that's as close as we get here because all we have is evidence of being put on notice of conditions that were later found to have resulted in bodily injury. And I'm just talking now about the evidence that was before the court, not counting Mr. Will's affidavit, which the court disregarded, and the court wouldn't properly disregard that affidavit. Well, would you concede that Mr. Will knew, at the very least, that damage in the form of an actionable nuisance was certain to occur if he didn't get the emissions under control? No, Your Honor. In fact, if you recall from his affidavit, he spoke to a neighbor about this who had shared with him the belief that, in fact, these things were being caused by, for example, the damage to neighbors being caused by the road, other factories in the area. I do not believe that we would acknowledge that at all. Again, he was aware of complaints of conditions. So, in other words, he would have to know, according to you, the absolutely specific ways, in other words, that maybe one neighbor would find it hard to breathe outdoors or another neighbor might just find the odor intolerable. Is that the way you look at it? He had to know each specific problem because, of course, he knew about the global problem. Just so we're clear, it's not just what I believe. Under the terms of the policy, it defines the kinds of injuries, and under the terms of the law, there has to be a showing that the insured knew that that injury had already occurred or knew that it was practically certain to occur. So, yes, I do disagree that Mr. Will or anybody of them had that knowledge. I see. Again, I think I see I've got my five minutes. I'm sorry, is this five minutes total of my 20 left? That's the remaining time. Total. Total. You reserved five minutes for rebuttal, but it's all your time. I would like to very quickly address the matter, and I'll save some time back, and that is that I do believe there were five reasons given for why Judge Simon disregarded the affidavit. Again, we acknowledge that that is an abuse of discretion status, but a court abuses discretion if there's an erroneous view of the law or a clear erroneous evaluation of evidence. I just want to address a couple of points. First off, I mean, we cited case law from this court that you can't just disregard an affidavit because it's self-serving. We quoted the Seventh Circuit in a case that says that that's very clear. Laid to rest the misconception that evidence presented in a self-serving affidavit isn't sufficient. The two cases Judge Simon relied upon in terms of saying that these could be excluded were totally in a posit and distinguishable in their facts, so I will reserve my remaining four minutes for rebuttal. Mr. Richman, as you do that, can I ask you to think about a question? Mr. Richman? Yes, I'm so sorry. I just want you to address the question when you come back up. Okay, but here's the question I have for you. What case law best supports the proposition that the kind of knowledge or notice of the kind of harms you're talking about in the policy have to be known with this kind of exacting alignment with the definitions in the policy? Okay, what you're saying is read the definitions in the policy. They don't meet the definition of bodily harm or property damage, okay? But there's no question at all that the company and those running the companies knew that they had an environmental mess on their hands. I mean, Judge Simon just canvasses that inventory up or that evidence up and down, and what you're saying is, no, the knowledge has got to be more exacting than that. It's got to fit the policy definition to a T. And my question, you don't have to answer it now on rebuttal, what case law supports that precise proposition? That's my question. Thank you, Your Honor. Mr. Lacks? May it please the Court, Jeremy Lacks on behalf of Apelli Westfield Insurance Company. The district court properly granted summary judgment in favor of Westfield, and that ruling should be affirmed for several reasons. I'd like to begin by addressing the prompt notice issue, which is dispositive of the case. I will address the exclusions as well. It's important to keep in mind that this is not a case where Westfield abandoned its insureds. In fact, the insureds have never once contested or challenged anything that Westfield did with respect to coverage. This proceeding supplemental was brought by appellants who sat on their hands on all matters related to insurance for seven years, while waging a battle against VIM recycling. And now, having secured a default judgment against VIM, but realizing that they're unable to collect, the appellants have done an about-face and have taken up a coverage claim that the insurers themselves never pursued. Under Indiana law, it is simply too late. The rule in Indiana for 115 years is that a prompt notice provision in an insurance policy is an essential term and that the insured's compliance is a conditioned precedent to a carrier's duty to provide coverage. And it's undisputed here that the insureds themselves never notified Westfield. I want to address Judge Rovner's question to my colleague about why appellants themselves never raised the issue of insurance to Westfield during the case, because I think that's an important question, and I think it's also dispositive. The case that appellants rely on is the Frankenmuth case, and that was a case, it's the only case that appellants can find where some notice by other means was found to trigger coverage. And in that case, the key distinguishing fact was that there had been a subpoena and a request for production served on the insurance company by the tort victim in the course of the underlying case. If appellants wanted Frankenmuth to apply here, appellants could have subpoenaed Westfield. They could have issued a request for production for the policy, and that would have given Westfield some indication that somebody had an interest in obtaining coverage. Appellants didn't do that. The record is clear on that. They waited until after they obtained the default judgment seven years later to initiate these proceedings supplemental. You know, there actually is another case that I found. It's Midwest Mutual versus Indiana Insurance Company, and it's 412 Northeast 2nd 84 at 86. It's an Indiana appellate court 1980 case that appears to deem actual notice from a third party sufficient. Neither of the parties cited that case. You might, you know, want to take a look at it. I'll certainly do that, Judge Rovner. What I would note, however, is that I'm not aware of any case, and I don't know about that case specifically, but where the notice came from the insurer's own attorney. And that's what happened here. The only awareness of the federal lawsuit that is in the record is Westfield learning of it from its own attorney in the course of evaluating coverage for a different lawsuit. And there's no case that we could find where knowledge of a case from one's own counsel was enough to satisfy a contractual notice requirement in an insurance policy. You know, I certainly will grant you that the VIN defendant's failure to give Westfield notice and the delay in Westfield finding out about the suit gave rise to a presumption of prejudice. But what concrete prejudice was there here, really? Westfield knew about the suit before our court vacated the dismissal and sent it back to the district court. And as the appellants say, this took the litigation back to square one. What rights do you think Westfield had lost at that point? Well, first, Your Honor, I would submit that the prejudice here lasted for the entire seven years because, as I note, the knowledge that Westfield had from its own attorney wasn't sufficient to constitute notice under Indiana law. So essentially appellants were able to obtain a $50 million default judgment without Westfield ever being notified that somebody wanted coverage for that specific lawsuit. But even if you accept the appellant's position that the knowledge that Westfield had after a year was sufficient notice, which we don't concede, Westfield was still prejudiced in that one-year period because it lost the opportunity to select counsel of its own to handle the case at the beginning. It lost the opportunity to conduct a coverage investigation. It lost the opportunity to involve other carriers who had provided insurance to VIM Recycling in the years that the damage occurred. And the fact that there was no adverse decision is not the only form of prejudice that courts have recognized. And the fact that VIM Recycling hadn't had any adverse decision against it doesn't cure the prejudice to Westfield from losing those opportunities. It's impossible to say in retrospect how Westfield's appointed counsel may have handled the case differently if it had been appointed right off the bat. It may not have brought the motion to dismiss on jurisdictional grounds that came up to this court and was reversed. We just can't say. And that uncertainty is itself prejudicial as this court has recognized. The other point on prejudice that I'd like to make is that the manner in which Westfield learned of the federal lawsuit was itself prejudicial because Westfield learned of it after being formally notified with respect to this identical state court lawsuit. And what that showed to Westfield was that the insured was sophisticated in matters of insurance and it knew how to request and seek coverage by providing formal tender when it wanted it. And so because there was no similar tender with respect to the federal lawsuit, Westfield was left to conclude, and I think rightly, that the insured had made a strategic decision to go with its own attorney for the federal lawsuit and it never changed course from that decision. The last point I want to make on notice is to address the consequences that might result if the court were to accept appellant's argument because those consequences would be profound on the insurance industry as well as the legal industry. If the court were to overturn the 100 years of precedent on the prompt notice requirement, it would open a Pandora's box of issues. It would change the way that insurance companies do business because if awareness of a lawsuit is equivalent to notice, then first of all it would incentivize insurers to put their heads in the sand and avoid information that could trigger an obligation without intent. Responsible insurers, meanwhile, would be forced to incur the increased administrative burden to actively monitor lawsuits against their insureds even where the insureds themselves never sought coverage and they would have to bring additional declaratory judgment actions to seek rulings of no coverage even where the insured itself never requested coverage, which would increase the burden on the court system. And all these increased costs will inevitably be passed along to the insurance company's customers in the form of higher premiums. Similarly, if the court were to hold that knowledge from an insurance company's own attorney was enough to constitute notice, it would force future courts to draw lines about what types of communications are significant enough to constitute notice, and this would obviously have significant implications for things like attorney-client privilege and malpractice. And it's for all of these reasons that insurance policies place the burden of informing an insurance company on the insured in the first place, and that contractual choice should be honored. If there are no other questions about the notice issue, I'd like to move to the exclusions. I think the best place to start on the exclusions is in the initial complaint that the appellants filed against the VIM defendants all the way back in 2009, and that complaint alleged that paragraph 183, and I quote, defendants, meaning VIM Recycling and Mr. Will, have been aware of nuisance conditions that exist at the VIM site since July of 2000, yet they have allowed those nuisance conditions to continue to this day. Now, as your honors are aware, the Westfield policy first took effect in 2004, and so it's been the central theme of appellant's case since literally day one that VIM and Mr. Will knew that their recycling activities were harming their neighbors for years, yet continue to operate in the same fashion. That is a textbook example of an expected injury and a textbook example of a known claim, and those exclusions clearly apply. Mr. Lax, why don't you respond to the argument Mr. Richman made that that's not enough, and the reason it's not enough is because there's no way to know that it fits definitionally within the policy with absolute certainty. Certainly, your honor. There's no case law that says that an insured has to know that specific level of harm to meet the policy definition in order for these exclusions to apply. If an insured knew that the exact property damage had occurred before it obtained a policy, that would be insurance fraud. The case law doesn't require that. What the case law requires, and I'll direct the court to the general housewares versus national surety case. It's an Indiana Court of Appeals case from 2000. That was actually in the context of the common law known loss doctrine, not the known claim exclusion, but the principle still applies, and I'll quote the court. It said, there is a distinct difference between knowledge of the existence of liability and knowledge of the full extent of liability. The existence of liability can be known without the full extent of liability being fixed. If the known liability has occurred or is substantially certain to occur, the known loss doctrine bars coverage, and what we have here is a case where clearly the insureds knew of the existence of liability. They knew that they had a fugitive dust problem. They knew that they had been sanctioned by the Indiana Department of Environmental Management for the emission of fugitive dust. They knew that the residents had come forward, both to inspectors and to Mr. Will himself, to complain about dust on their cars and on their houses, and they admitted that because of this dust problem, there was an increased risk of emission of fugitive dust to surrounding properties. That is clearly sufficient knowledge to satisfy these exclusions. Can I ask you a question about is it possible to root that point, in your view, actually in the language of the policy? It is, Your Honor. And let me tell you what I was wondering about, and Mr. Richman can respond to this and tell me I'm wrong, that the policy in the notice provision talks about if there's a known claim, obviously, but also in Section 4, Paragraph 2A, also providing notice of an occurrence or offense which may result in a claim. So it seems like on these particular facts, given what's alleged in the pretty serious environmental regulatory issues that this company was facing, it's hard to say that that language may result in a claim is not satisfied. But maybe am I wrong to think of the issue in those terms? You're not, Your Honor. You're absolutely right that the insured, certainly from the agreed orders it entered into with IDEM and the fines and penalties that it paid, it was certainly on notice that a claim may arise, and that should have been enough for the insured to put Westfield on notice that there may be a coverage claim coming down the road. And I would also point to the language of the known claim exclusion itself, which says that as long as injury or damage has occurred or begun to occur in whole or in part. Where's that at in the policy? That is the known claim exclusion. I believe it's at Paragraph 1 of the actual coverage. I can find it. One second. Oh, I see it. I got it. Okay. 1D, 1D in that area, 1D3. Right, 1D3. And that phrase, in whole or in part, does not appear anywhere in appellant's briefs. I haven't heard it mentioned this morning, but it's a significant phrase because it means that as long as ‑‑ basically what appellants are saying is that unless VIM and Mr. Will knew of the full extent of the damage, then the known claim exclusion wasn't triggered. But clearly as long as they knew in part it was triggered, and clearly they knew it was triggered or that there was damage in part here because they paid penalties. And as Mr. Will admitted in his affidavit, he paid to have people's cards cleaned. I want to briefly touch on Mr. Will's affidavit that the district court rightly kept out. That decision is subject to an abusive discretion standard, so unless the court finds that Judge Simon acted arbitrarily, which we don't believe he did, that decision is entitled to deference. But what Judge Simon did was that he looked at Mr. Will's four‑page affidavit and he held it against the dozens of documents and contemporaneous statements and words that Mr. Will spoke at the time where he admitted to dust problems. And then it looked at the four‑page after‑the‑fact affidavit in which he made these conclusory denials that he had knowledge that the specific policy provision had been triggered. And I think he rightly balanced those against one another and said that the contemporaneous words and actions carried far more weight. If an insured could avoid application of these exclusions simply by denying a belief that they were triggered after the fact, then these types of cases could never be resolved on summary judgment, and those exclusions would be rendered meaningless. So in short, the appellants are attempting to rewrite the history at the 11th hour in both with respect to notice and with respect to the exclusions. And in closing, this court has found recently that where an insured waits seven years to notify its insurance carrier of a lawsuit, that is simply too long and it's not a close call. And in this case, the insured never provided the contractual notice and even appellants themselves waited seven years until they had obtained a judgment to seek coverage. And so that is certainly not a close call. Unless there are any other questions, I would respectfully ask the court to affirm. Thank you, Mr. Lacks. Mr. Ritchie. Judge Scudder, before I answer your question directly, let me address, so we kind of keep in the order of notice and while it's fresh in my mind, I want to first address this argument made in the briefs, and again by Mr. Lacks just now, that Westfield says that it was left to conclude that the VIM defendants didn't want insurance coverage in defense of this matter. Number one, there's no evidence of that. That's what they want you to, one reason they want you to assume or one, the evidence, however, shows that there is another reason why, after it was remanded back and after the clues sadly firm left, why they didn't do it, and that's because they knew it would be futile. On the same exact claim in the state court, Westfield had already investigated, had already issued a lengthy letter that says, based upon the same facts, we're denying coverage. So you're well aware of the Allison-Tycor case in which, again, the court noticed that it would have been futile because Tycor in that case had already said that they were not going to cover it to go back and do it again. As opposed to speculating about what Westfield may or may not have concluded about that, the real fact is that everybody knew it would be futile, and that's the real reason. Another thing I want to point out. Upon notice of the suit, yes, it had been dismissed. Yes, it was up on appeal. Westfield had a duty. The policy says we have a duty to defend cases, and they had a right to defend, regardless of whether they were asked, and it's never been disputed. That duty to defend doesn't end at the trial court. You have a duty to continue to defend some challenge on appeal, and they don't dispute that. So upon knowledge that this was on appeal, they were supposed to get involved in that case. We talked before about no prejudice by virtue of it was a do-over when it came back, but all the things they would have done and learned if they'd come and defended the appeal here. The other thing is that this whole prejudice thing, you've got to remember, okay, I'm talking about no prejudice, they're talking about prejudice. You've got to admit there's some evidence of no prejudice here, and the case law says, the Seventh Circuit says, that if there's evidence, then it's a question of fact for the trier of fact. You can't resolve it on summary judgment. So we've got evidence of non-prejudice here. It's a question of fact. So let's now turn in my one minute and 30 seconds to answering your question first. Your Honor, we are not aware of any case that addresses what exactly an insured must have been aware of and had to expect to trigger these exclusions. But what's controlling is what the exclusions themselves say. What they say is the insured must have been aware, must have been aware, that bodily injury or property damage had occurred or must have expected that they were going to occur. You can't simply ignore what those policy terms say. They define what had to have been known. The very example that Mr. Lacks gave first about what was said in the complaint, I think, highlights what I said. What that complaint alleges was that there had been complaints to the VIM defendants of, and it says it twice, conditions. Conditions. No evidence, none, of bodily injury, knowledge that because of these conditions, bodily injury or property damage had occurred or is practically certain to occur, and that's what has to be shown. And with 20 seconds left, I'll ask you any further questions. Apparently not. Thank you very much, Your Honors. I appreciate it. Thanks to all counsel. Case is taken under advisement, and the court will stand in recess for 10 minutes.